UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

DR. JONG HI BEK          )
                                   )
      v.              )    Cause No. 2:08-CV-290 RM
                                   )    (arising out of 2:03-CR-4(01) RM)
UNITED STATES OF AMERICA   )

OPINION AND ORDER

Following an eight day jury trial, petitioner Dr. Jong Hi Bek, who ran a pain management clinic in Gary, Indiana, was found guilty on several counts of conspiracy to dispense and distribute controlled substances and distribution of controlled substances outside the course of professional practice in violation of 21 U.S.C. § 846, 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. The jury also found Dr. Bek guilty of aiding and abetting the commission of health care fraud in violation of 18 U.S.C. § 1347 and 2. Although there was a forfeiture allegation in the indictment, the parties waived presentation of that issue to the jury and agreed to allow forfeiture to be handled by the trial judge. The court sentenced to forty-one months' imprisonment to be followed by two years' supervised release.

Dr. Bek appealed his conviction, contending that sufficient evidence didn't support the jury verdict, that the trial judge should have excluded certain medical evidence, and the government interfered with his defense and choice of counsel by vindictively prosecuting his original attorney. The court of appeals reversed Dr. Bek's conviction on count 9 of the indictment, but denied Dr. Bek's remaining claims. The Supreme Court denied Dr. Bek's petition for writ of certiorari. Dr. Bek,

now proceeding *pro se*, seeks relief pursuant to 28 U.S.C. § 2255. For the following reasons, the court denies Mr. Bek's petition.

The court of appeals in <u>United States v. Bek,</u> 493 F.3d 790 (7th Cir. 2007), provided a background of the relevant evidence presented during the trial of this case. That background is summarized and recast here with supplemental facts to provide a backdrop of the allegations asserted in Dr. Bek's § 2255 petition.

Dr. Bek ran a notorious pain management clinic in Gary. The clinic was so popular that there was often a line of people waiting outside the clinic in the morning to get prescription drugs. Law enforcement became suspicious and began investigating Dr. Bek's practice. Undercover officers entered Dr. Bek's clinic posing as prospective patients and carrying a hidden purse camera. One undercover officer, Detective Kirk Banker, testified at trial that he, a confidential informant, and another patient all entered Dr. Bek's office for an examination. The examination consisted of Dr. Bek taking their blood pressure and weights and having them lift their legs and bend over. The unidentified patient then received a shot in his upper buttocks and upon receiving $50 from each patient, Dr. Bek prescribed the drugs that each person requested. Det. Banker returned to the clinic several times with other detectives and experienced similar examinations. The government played videotape recordings of the undercover operation and proffered the testimony of other officers to corroborate Det. Banker's testimony.

Testimony from undercover officers and former patients revealed that during the brief exams, Dr. Bek didn't request past medical records, order tests or recommend lifestyle changes; he administered exams in the presence of other patients; he wouldn't recommend medication, but only prescribe requested drugs; and he wouldn't follow up with his patients to determine whether the drugs were effective. There was also evidence presented of exceedingly poor record-keeping, which one expert called "astonishing" (e.g., reporting temperatures of 98.6 degrees for nearly every patient). Dr. Bek didn't take appointments and requested payment in cash; $50 for a prescription and $100 for a prescription with refills.

Evidence was presented to the jury that Dr. Bek routinely issued the same series of prescriptions for all his patients, regardless of age, physical condition, and medical history.[1] The government's experts testified that this prescribing pattern wasn't within the scope of medical practice and was without legitimate medical purpose. A female undercover officer testified that Dr. Bek gave her a prescription for Viagra even though Viagra has no authorized indications for women. A female patient also testified that although she was visibly pregnant, Dr. Bek never warned her about the effect the drugs might have on her pregnancy. Undercover officers recount telling Dr. Bek that they took their pain medication with beer because they liked the way it made them feel; Dr. Bek offered no comment or admonition against such behavior. A former patient also testified that

---

[1] Dr. Bek prescribed Scheduled III controlled substances, such as Vicodin ES, Vicodin HP, Anadrol-10, and Anadrol-50, and Schedule IV controlled substances, such as Xanax, Diazepam, Adipex-P, Fastin, Darvocet N, Halcion, and Dalmane.

Dr. Bek prescribed him drugs even though he had visible scars from heroin injections; Dr. Bek never asked about the scars or required any type of drug testing. Although his patients complained of pain, Dr. Bek made no effort to find the source of the patients' alleged pain. There was also evidence that Dr. Bek prescribed multiple medications having the same effects and drugs that are dangerous when taken in combination.

Witnesses testified that while most area pharmacies wouldn't fill Dr. Bek prescriptions, two independently owned and operated pharmacies, 55th Avenue Pharmacy and Washington Drugs, were willing to do so. Aware of this, Dr. Bek maintained a pre-printed list of the accommodating pharmacies which he handed out to his patients. Pharmacists from both stores pleaded guilty to illegally distributing controlled substances, and a pharmacist testified that Dr. Bek's prescriptions typically were of the same strength and quantity, and that this uniformity enabled the pharmacy to pre-fill bottles with the medication that Dr. Bek's patients routinely requested. The evidence established that both pharmacies depended on Dr. Bek's business.

Evidence was presented that Dr. Bek's assistant, Richard Faloona, facilitated the drug operation by screening patients to make sure they knew what to say to obtain the controlled substance prescriptions, by weeding out those individuals seeking more powerful controlled substances than Dr. Bek was willing to prescribed, and directing patients to the pharmacies that would fill Dr. Bek's prescriptions.

Insurance company representatives testified that they sent letters to Dr. Bek notifying him that his patients were using insurance to purchase the drugs he prescribed. The letters also notified Dr. Bek that other doctors were treating some of his patients, and that his treatments were duplicative and involved heavy narcotics use. The jury received documents and materials found in Dr. Bek's office and patients' files that further supported the charge that he was aware that patients were using insurance to pay for the filling of his prescriptions.

Dr. Bek testified in his own defense, and maintained that he conducted thorough examinations of his patients and inquired about their medical histories and injuries. Dr. Bek said he trusted what his patients told him about their medical histories and wouldn't have prescribed drugs to the undercover agents if they hadn't lied about their histories. As Dr. Bek noted, former patients testified that they also had lied about their condition to obtain prescription drugs from him. Dr. Bek testified that he generally didn't send patients for diagnostic tests such as x-rays and MRIs because those tests were too costly for his patients and generally ineffective in identifying pain. Dr. Bek further stated that he didn't obtain medical records of his patients because it would be too difficult in his small office to make all patients sign medical releases.

After hearing the evidence, the jury convicted Dr. Bek on twenty-six counts (one count was previously dismissed by the government), and he was sentenced

to forty-one months' imprisonment, followed by two years of supervised release.[2] At sentencing, the court entered a final order of forfeiture of all funds in Dr. Bek's Bank One, Indiana account and ordered the remaining accounts that the government sought forfeiture to be resolved in the pending civil forfeiture action, <u>United States of America v. Account 1563632726 *et al.*</u>, Case No. 2:02-cv-480, Northern District of Indiana, Hammond Division.

Dr. Bek, acting *pro se,* filed this motion, raising numerous claims that he appears to couch in terms of ineffective assistance of counsel and newly discovered facts. Dr. Bek raises thirty-one issues that can be summarized as follows: vindictive/selective prosecution (paragraphs 1, 3, 4, 5, 18, 25, 30); evidence that should have been presented to the jury (paragraphs 2, 5, 6, 7, 8, 9, 10, 11, 12, 14, 26, 27, 28), credibility of witnesses (paragraphs 29); issues related to state court proceeding (paragraphs 15, 31); newly discovered evidence (paragraphs 1, 13, 19, 20); juror misconduct and coercion (paragraphs 16, 17); application of civil standard of care (paragraphs 21); and forfeiture of funds amounting to cruel and unusual punishment (paragraph 22, 23, 24).

The government responds to Dr. Bek's claim for ineffective assistance of counsel by arguing that he hasn't made the showing required by <u>Strickland v. Washington</u>, 466 U.S. 668 (1984). The government contends that the record doesn't contain any basis for this claim in that there is no explanation of how his

---

[2] Dr. Bek is serving his term of supervised release.

counsel's performance was constitutionally inadequate or what evidence his counsel should have pursued. In response to Dr. Bek's remaining claims, the government responds that these claims are procedurally defaulted because Dr. Bek either raised the issue on direct appeal or hasn't tried to demonstrate "cause" or "prejudice" for not raising the issue on direct appeal. The government further contends that a juror's statement to the press about the jury's internal deliberations cannot be used to attack a verdict. Dr. Bek filed no reply.

ANALYSIS

Relief under § 2255 is reserved for extraordinary situations. Prewitt v. United States, 83 F.3d 812, 816 (7th Cir. 1996) (citing Brecht v. Abrahamson, 507 U.S. 619, 633-634 (1993)). "Relief under § 2255 is available only for errors of constitutional or jurisdictional magnitude, or where the error represents a fundamental defect which inherently results in a complete miscarriage of justice." Kelly v. United States, 29 F.3d 1107, 1112 (7th Cir. 1994) (quotations omitted), *overruled on other grounds by* United States v. Ceballos, 302 F.3d 679 (7th Cir. 2002). A court may deny a § 2255 motion without an evidentiary hearing if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). Because the motion and files and records in this case conclusively demonstrate that Dr. Bek isn't entitled to relief, the court decides this matter without an evidentiary hearing.

*Procedural Default*

A motion under § 2255 is "neither a recapitulation of nor a substitute for a direct appeal." <u>McCleese v. United States</u>, 75 F.3d 1174, 1177 (7th Cir. 1996) (citing <u>Belford v. United States</u>, 975 F.2d 310, 313 (7th Cir. 1992)). When an issue has already been raised on direct appeal, a petitioner cannot rehash those issues in a § 2255 petition, absent a showing of changed circumstances. <u>See Belford v. United States</u>, 975 F.2d 310, 313 (7th Cir. 1992), *overruled on other grounds by* <u>Castellanos v. United States</u>, 26 F.3d 717 (7th Cir. 1994). Further, a petitioner cannot raise nonconstitutional issues in his habeas petition that could have been but weren't raised on direct appeal, absent changed circumstances. <u>See Belford v. United States</u>, 975 F.2d at 313. With the exception of claims for ineffective assistance of counsel, constitutional issues that weren't raise on direct appeal, can only be brought in a habeas petition if the petitioner demonstrates "cause for the procedural default as well as actual prejudice from the failure to appeal," <u>Barker v. United States</u>, 7 F.3d 629, 632 (7th Cir. 1993), or where the petitioner establishes that the district court's failure to consider the issue would result in a fundamental miscarriage of justice,[3] <u>see</u> <u>Galbraith v. United States</u>, 313 F.3d 1001, 1006 (7th Cir. 2002) (internal quotation marks and citation omitted).

On appeal, Dr. Bek raised the argument that there was insufficient evidence to support a conviction against him. The court of appeals denied this claim, except

---

[3] "[A]n ineffective-assistance-of-counsel claim may be brought in a collateral proceeding under § 2255, whether or not the petitioner could have raised the claim on direct appeal." <u>Massaro v. United States</u>, 538 U.S. 500, 504 (2003).

as it related to count 9. To the extent Dr. Bek asserts new issues challenging the sufficiency of the evidence (paragraphs 2, 5, 6, 7, 8, 9, 10, 11, 12, 14, 26, 27, 28, 29[4]) as opposed to challenging the effectiveness of his counsel, Dr. Bek can't succeed without a showing of changed circumstances.[5] Dr. Bek hasn't made a showing of changed circumstances, so any claim relating to the sufficiency of evidence is procedurally defaulted.

Dr. Bek also contends that he was "charged in civil standard, and civil guideline." (paragraph 21). Dr Bek similarly argued on appeal that the evidence was insufficient to support his conviction because the government's experts testified as to the civil "standard of care" rather than the higher criminal "course of processional practice" standard. Essentially, Dr. Bek argued that the government's evidence proved malpractice, not criminal conduct. The court of appeals held that Dr. Bek's "concern about whether the jury was misled by the government's evidence is allayed by the jury instructions", noting that it is presumed that the "jury followed these proper instructions." United States v. Bek, 493 F.3d at 798. The court of appeals further found that the evidence was

---

[4] In paragraph 29, Dr. Bek states that many of the witnesses weren't credible because they had lied to Dr. Bek to obtain prescription drugs. Dr. Bek's attacks on the credibility of witnesses appear to be a challenge to the sufficiency of the evidence. In any event, the credibility of witnesses is a nonconstitutional error; the failure to raise this issue on appeal precludes petitioner from raising it here. See Norris v. United States, 687 F.2d 899, 900 (7th Cir. 1982); see also United States v. Briscoe, 896 F.2d 1476, 1508 (7th Cir. 1990).

[5] Dr. Bek has asserted that "some facts were found after trial"; the court addresses these facts (paragraphs 1, 13, 19, 20) later under "newly discovered facts."

sufficient to satisfy the criminal standard. Id. at 799. Dr. Bek can't reassert this claim on post conviction relief without a showing of changed circumstances.

On appeal, Dr. Bek also argued that the government vindictively prosecuted his original attorney, Jerry Jarrett, in retaliation of Mr. Jarrett's successful representation of Dr. Bek in the Indiana state court proceeding charging Dr. Bek with felony-murder. The court of appeals rejected Dr. Bek's vindictive prosecution argument. Dr. Bek now raises additional issues attempting to substantiate his claims of vindictive/selective prosecution and prosecutorial misconduct (paragraphs 1, 3, 4, 5, 18, 25, 30). Upon careful review though, this court can't ascertain any argument by Dr. Bek that satisfies the cause and prejudice requirements to permit him to further litigate this argument in a collateral proceeding. Additionally, Dr Bek hasn't made any showing that a refusal to consider the issue would be a fundamental miscarriage of justice. These claims are procedurally defaulted. As explained later, even if the claims weren't procedurally defaulted, Dr. Bek hasn't brought forth sufficient evidence to establish vindictive/selective prosecution.

Dr. Bek presents issues relating to the forfeiture of his account at Bank One, Indiana and juror misconduct/coercion. Dr. Bek contends that the forfeiture[6] for his violation of 21 U.S.C. § 846 was excessive and cruel and unusual punishment under the Eighth Amendment and was also improper because his co-

---

[6] Although no fine was assessed against Dr. Bek, he was ordered to forfeit his bank account in the approximate amount of $535,061.28.

defendants entered into a plea agreement with a significantly lesser forfeiture provision (paragraph 24).[7] Dr. Bek also contends that two jurors changed their mind on the day of the verdict and that a news media man said "a lot of coercion was going on in the jury room." (paragraphs 16, 17). Dr. Bek makes these assertions without indicating why the issues weren't raised on direct appeal. Because Dr. Bek doesn't make the requisite showing, these claims are procedurally defaulted. As later discussed, even if these claims weren't procedurally defaulted, they are without merit.

*Vindictive Prosecution*

Even if Dr. Bek's vindictive/selective prosecution claims weren't procedurally defaulted, the claims wouldn't succeed on the merits. A vindictive prosecution claim arises when the government pursues prosecution in retaliation for the exercise of a protected statutory or constitutional right. United States v. Monsoor, 77 F.3d 1031, 1034 (7th Cir.1996). "A prosecution is vindictive and a violation of due process if undertaken to punish a person because he has done what the law plainly allows him to do." United States v. Bullis, 77 F.3d 1553, 1558 (7th Cir. 1996) (quotations omitted). The Constitution prohibits the government from undertaking a prosecution based solely on a vindictive motive. See United

---

[7] Dr. Bek states that Judge Sharp said "[h]old [the Bank One, Indiana account] and let the others go, so we can pay the bills for expert witness lawyers and other expenses . . . and rest can be solved in federal civil court." (paragraph 22). Dr. Bek complains that this statement was changed to "forfeit [Bank One, Indiana account] and rest to be settled in federal civil court." (paragraph 23). The court finds no substantive or material difference between the two statements.

States v. Jarrett, 447 F.3d 520, 524 (7th Cir. 2006). To maintain a vindictive prosecution claim, Dr. Bek "must affirmatively show through objective evidence that the prosecutorial conduct at issue was motivated by some form of prosecutorial animus, such as a personal stake in the outcome of the case or an attempt to seek self-vindication." United States v. Cooper, 461 F.3d 850, 856 (7th Cir. 2006) (quoting United States v. Falcon, 347 F.3d 1000, 1004 (7th Cir. 2003)). Government prosecutors, however, have "wide discretion over whether, how, and when to bring a case." United States v. Jarrett, 447 F.3d at 525 ("In the ordinary case, so long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to bring . . . generally rests entirely in his discretion.") (citing United States v. Armstrong, 517 U.S. 456, 463 (1996)).

The law presumes that the government has exercised its constitutional responsibilities properly; to overcome this presumption, the defendant must show clear evidence to the contrary. United States v. Jarrett, 447 F.3d at 525. "Only after a defendant comes forward with objective evidence of actual vindictiveness does the burden shift to the government to show that the motivation behind the charges was proper." Id. (citing United States v. Bullis, 77 F.3d 1553, 1559 (7th Cir. 1996)). The defendant must persuade the court that he wouldn't "have been prosecuted but for the government's animus or desire to penalize him." Id. (citing United States v. Monsoor, 77 F.3d at 1034). When challenging an indictment, a

claim of vindictive prosecution is "extremely difficult to prove." <u>United States v.</u> <u>Jarrett</u>, 447 F.3d at 526.

In <u>Jarrett</u>, the court of appeals reversed the district court's finding of vindictive prosecution when there was no evidence of a public or private statement by a prosecutor manifesting animus toward the defendant, no document that might establish bad motives on the part of the government, and no similar "smoking gun." <u>United States v. Jarrett</u>, 447 F.3d at 527. The court found that suspicious timing, speculation about the government's motives, and allegations that the U.S. Attorney's office failed to follow its internal procedures in pursuing the indictment wasn't the type of clear and objective evidence that is necessary to maintain a claim of vindictive prosecution. <u>Id.</u>

Dr. Bek cites several hypotheses to substantiate his claim of vindictive prosecution. First, Dr. Bek contends that his prosecution was politically motivated because he prescribed drugs to a local mayor's son and later was charged with the son's death in state court (paragraph 1). Next, Dr. Bek asserts that one of the federal prosecutors handling Dr. Bek's case followed the case from state to federal court after working for an administrator in the local prosecutor's office whose niece had been Dr. Bek's patient and had suffered a drug overdose (paragraphs 3, 4 and 5). Finally, Dr. Bek asserts that this "whole thing is part of K.S. Shin's extortion" based on the following contentions: in 1974 Dr. Bek paid K.S. Shin to have his son brought to the United States; in 1979 K.S. Shin obtained a job as a C.I.A. member and since then has hired his son to eavesdrop on Dr. Bek's office;

and in 1985, K.S. Shin demanded an additional $35,000 for bringing Bek's son to the United States, but Dr. Bek ignored this demand (paragraph 30).[8]

Like the defendant in <u>Jarrett</u>, Dr. Bek hasn't come forward with objective evidence of actual vindictiveness.[9] Dr. Bek points to no evidence of the former mayor's supposed involvement in the decision to prosecute him. Further, as the <u>Jarrett</u> court noted, "[t]hat there was some overlap between the personnel in the state prosecutor's office and the USAO does not support a finding of prosecutorial vindictiveness." <u>United States v. Jarrett</u>, 447 F.3d at 530 (citing <u>United States v. Algee</u>, 309 F.3d 1011, 1015 (7th Cir. 2002)). There is simply a lack of evidence showing that Dr. Bek wouldn't have been prosecuted but for the personal animus or vindictive motivation of the prosecutor. Finally, there is no evidence to support Dr. Bek's assertion that this "whole thing is part of K.S. Shin's extortion", nor is there even any allegation that K.S. Shin had contact with the prosecutors involved in Dr. Bek's case. At best, this accusation is an unsubstantiated suspicion, insufficient to satisfy the rigorous standard required to support a claim of vindictive prosecution.[10]

---

[8] Dr. Bek also says he had a public defender and claims that public defenders "tend to go along with the prosecutor," because they "may get more referrals by doing so." (paragraph 18). It's unclear what argument Dr. Bek is making in paragraph 18, but in any event, the fact that Dr. Bek had a public defender doesn't entitle him to post conviction relief.

[9] Because Dr. Bek's allegations are vague, it is not clear whether he is even contending that the government retaliated against him for the exercise of a protected statutory or constitutional right.

[10] Dr. Bek also contends that the assistant prosecutor lied during trial when she stated that Dr. "Bek was making $900,000.00 per year every year, drug money"; Dr. Bek maintains that this large sum of income was obtained only in 2000 and was mostly from real estate and that he gave Judge Sharp copies of his income tax return for several years. (paragraph 5). While Dr. Bek might

*Selective Prosecution*

Dr. Bek points out that he wasn't offered a plea agreement even though his co-defendants were offered plea agreements (paragraphs 25). Dr. Bek's selective prosecution claim on this basis is without merit. Claims of selective prosecution are judged under ordinary equal protection standards. <u>Jarrett v. United States</u>, 822 F.2d 1438, 1443 (7th Cir. 1987) (citing <u>Wayte v. United States</u>, 470 U.S. 598 (1985)). To establish a prima facie case of selective prosecution, Dr. Bek would need to establish that he was singled out for prosecution while others similarly situated were not prosecuted, and next must demonstrate that the discriminatory selection was based an arbitrary classification such as race, religion, political opinion or the exercise of constitutional rights. <u>Jarrett v. United States</u>, 822 F.2d at 1443 (citing <u>United States v. Rodriguez</u>, 803 F.2d 318, 320 (7th Cir. 1986)); <u>see also</u> <u>United States v. Cyprian</u>, 23 F.3d 1189, 1196, n. 10 (7th Cir. 1994); <u>United States v. Monsoor</u>, 77 F.3d 1031, 1034 (7th Cir. 1996).

Dr. Bek doesn't claim that others similarly situated weren't prosecuted, only that other co-defendants were provided plea agreements and presumably received more favorable sentences as a result. First, it is unlikely that a claim of selective

---

have a claim for prosecutorial misconduct *if* the prosecutor misstated evidence to the jury, Dr. Bek still would need to show that the prosecutor's comments "so infected the trial with unfairness as to make the resulting conviction a denial of due process." <u>See</u> <u>Darden v. Wainwright</u>, 477 U.S. 168, 181 (1986); <u>see also</u> <u>United States v. Morris</u>, 498 F.3d 634, 638 (7th Cir. 2007). Dr. Bek's blanket assertion that the prosecutor lied during trial about his income from drug distribution, without more, is insufficient to establish prosecutorial misconduct. <u>See</u> <u>United States v. Glover</u>, 479 F.3d 511, 521 (7th Cir. 2007)

prosecution even applies when co-defendants are offered plea agreements.[11] Second, Dr. Bek hasn't shown that his co-defendants were similarly situated. Four co-defendants were pharmacists who filled Dr. Bek's prescriptions; the other co-defendant was Dr. Bek's officer manager who assisted Dr. Bek's practice. These individuals aren't similarly situated to Dr. Bek who, as the prescribing physician, was in a unique position to orchestrate the illegal drug distribution. Finally, there isn't any allegation or evidence that Dr. Bek was selected for prosecution on the basis of an arbitrary classification such as race, religion, political opinion or the exercise of constitutional rights. This court therefore rejects any claim of selective prosecution.

*Forfeiture as Violation of Eighth Amendment*

Dr. Bek contends that the forfeiture for his violation of 21 U.S.C. § 846 was excessive and cruel and unusual punishment under the Eighth Amendment and was also improper because his co-defendants entered into plea agreements with a forfeiture provision that was significantly less severe (paragraph 24). This court already has held that Dr. Bek's claim for selective prosecution based on his co-defendants' plea agreements is without merit. The co-defendants to whom Dr. Bek

---

[11] A prosecutor has no obligation to offer a defendant a plea agreement. See United States v. Hall, 212 F.3d 1016, 1022 (7th Cir. 2000) (citing United States v. Springs, 988 F.2d 746, 749 (7th Cir. 1993) ("Prosecutors need not offer discounts and may withdraw their offers on whim. Defendants have no substantive right to bargain-basement sentences.")). The court of appeals has stated that "the government is not bound to discuss, much less enter into, a plea agreement because there are people who truly belong behind bars due to the serious harm they pose to society, especially those who choose to 'poison the community with the sale of illegal drugs.'" See United States v. Hall, 212 F.3d at1022 (citing United States v. O'Grady, 812 F.2d 347, 355 (7th Cir. 1987)).

refers agreed to forfeit $80,839.00, representing the proceeds from the offense to which they pleaded guilty, in lieu of forfeiting certain real property. As discussed, it was within the government's discretion to enter into plea agreements with Dr. Bek's co-defendants, who aren't similarly situated to Dr. Bek. Whether the forfeiture entered against Dr. Bek in the amount of $535,061.28 was cruel and unusual punishment under the Eighth Amendment requires further discussion.

Title 21 U.S.C. § 853(a) provides that in imposing a sentence on a person convicted of an offense in violation of 21 U.S.C. § 841 or 846, the court shall order that the person forfeit to the United States any property constituting or derived from proceeds obtained from the offenses of conviction.[12] Because a forfeiture under § 853(a) is punitive, the Eighth Amendment limits its application. <u>See Libretti v. United States</u>, 516 U.S. 29, 39 (1995). "A punitive forfeiture violates the Eighth Amendment's excessive fines clause if it is 'grossly disproportional to the gravity of a defendant's offense' or otherwise does not bear 'some relationship to the gravity of the offense it is designed to punish.'" <u>United States v. Bernitt</u>, 392 F.3d 873 (7th Cir. 2004) (quoting in part <u>United States v. Bajakajian</u>, 524 U.S. 321, 334 (1998)). The court can consider as pertinent factors (1) whether the defendant falls into the class of persons at whom the criminal statute was principal directed; (2) other penalties authorized by the legislature (or the

---

[12] The second superseding indictment sought forfeiture, pursuant to 21 U.S.C. § 853 and 18 U.S.C. § 982(a)(7), of all property constituting or derived from any proceeds the defendant obtained directly or indirectly as a result of the violations of Title 21, United States Code, Section 841 and 846, and 18 U.S.C. 1347. The court ordered forfeiture under 21 U.S.C. § 853 pursuant to Dr. Bek's conviction under 21 U.S.C. § 841 (dispensing controlled substances) and 846 (conspiracy to dispense controlled substance).

sentencing guidelines); and (3) the harm caused by the defendant. See United States v. Bajakajian, 524 U.S. at 337-340; see also United States v. Heldeman, 402 F.3d 220, 223 (1st Cir. 2005).

Dr. Bek falls into the class of persons that 21 U.S.C. § 853 was directed, so the court next considers "the other penalties that the Legislature has authorized" as relevant evidence. United States v. Bernitt, 392 F.3d at 880. Dr. Bek was convicted on 26 counts. Each drug distribution count carried a maximum fine of $250,000. The applicable fine range for Dr. Bek's conviction under the sentencing guidelines was $7,500 and $6,500,000. Dr. Bek's forfeiture of $535,061.28 is significantly less than the total penalty that the district court could have imposed. See United States v. Bernitt, 392 F.3d 873, 880-881 (7th Cir. 2004) (denying petitioner's claim that forfeiture was in violation of the Eighth Amendment reasoning that the penalty was lower than the total penalty that could have been imposed).

Finally, the harm Dr. Bek caused was significant. Dr. Bek's offense conduct wasn't typical of drug dealing and didn't involve guns or violence, but his actions were calculated, repeated, not the result of simple misguided judgment, and facilitated access to dangerous substances without medical need. Dr. Bek doesn't contend that the proceeds in the Bank One, Indiana account weren't connected to his illegal drug disbursement. The sentencing court, after determining that the government had established the requisite nexus between all funds on deposit in

the Bank One, Indiana account[13] and the offenses committed by the defendant, under 21 U.S.C. § 846 and § 841, ordered forfeiture of the property. The amount of forfeiture is directly proportional to the offense in that the forfeited amount corresponds to the amount that Dr. Bek obtained from his illegal drug disbursement. See United States v. Segal, 495 F.3d 826, 840 (7th Cir. 2007) (stating that a forfeiture is only excessive if it is disproportional to the offense). The forfeiture penalty is therefore not grossly disproportionate to the gravity of the harm the jury found Dr. Bek had caused.

*Juror Misconduct and Coercion*

Dr. Bek also contends that two jury members called Judge Sharp the day of the verdict, reporting that they had changed their mind; he also contends that on the day of the verdict, a news media man said "a lot of coercion was going on in the jury room." (paragraph 16, 17). Federal Rule of Evidence 606(b) provides that "[u]pon an inquiry into the validity of a verdict . . . a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon that or any other juror's mind or emotions as influencing the juror . . . or concerning the juror's mental processes . . ." A juror can testify about extraneous prejudicial information that was brought to the juror's attention, outside influences, or whether there was a mistake in entering

---

[13] The court found that the issue of forfeiture of the remaining bank accounts should be resolved in the pending civil forfeiture action, United States of America v. Account 1563632726 et al., Case No. 2:02-cv-480, Northern District of Indiana, Hammond Division.

the verdict on the verdict form. FED. R. EVID. 606(b). Dr. Bek cannot submit "[a] juror's affidavit or evidence of any statement by the juror . . . on a matter about which the juror would be precluded from testifying." FED. R. EVID. 606(b).

Rule 606(b) greatly restricts post-trial inquiry into a verdict. See e.g., Arreola v. Choudry, M.D., 533 F.3d 601, 606-607 (7th Cir. 2008), *petition for certiorari filed* (affirming the district court's limited inquiry when investigating claim of juror bias). Rule 606(b) "is designed not only to protect the jurors from being pestered by lawyers after the verdicts are rendered, but also to protect the judicial process from efforts to undermine verdicts by scrutinizing the jurors' thoughts and deliberations." United States v. Ford, 840 F.2d 460, 465 (7th Cir. 1988). By prohibiting jurors from testifying as to matters which occurred during deliberations or that effect upon the juror's decision to vote a certain way, the Rule discourages almost all inquires into the jurors' deliberative process once a verdict is rendered.

Without a claim that extraneous prejudicial information was brought to the jury's attention or that outside influences were brought to bear on any juror, the court cannot inquire into the jury's deliberative process. United States v. Briggs, 291 F.3d 958, 964 (7th Cir. 2002). Claims that there were intrajury influences on the verdict or allegations that a juror was extremely and excessively pressured during deliberations are insufficient to obtain post conviction relief. United States v. Briggs, 291 F.3d at 963 (citing United States v. Ford, 840 F.2d at 465-466). The court only has a duty to investigate when the party alleging juror misconduct

makes an adequate showing of extrinsic influence to overcome the presumption of jury impartiality. United States v. Davis, 15 F.3d 1393, 1412 (7th Cir. 1994) (citing United States v. Barshov, 733 F.3d 842, 851 (11th Cir. 1984)).

In United States v. Febus, 218 F.3d 784, 795 (7th Cir. 1999), the petitioner brought an appeal contending that a juror's post-verdict statements proved that he was denied his Sixth Amendment right to an impartial jury. The petitioner based his argument on a purported newspaper article that reported statements by a juror that the court's instructions confused her and that other jurors pressured her to vote for a guilty verdict that she didn't favor. Id. The court first noted that because the article wasn't in evidence, the court couldn't consider it. Id. The court went on to state that even if it had the article, it would be inadmissible under Rule 606(b). Id. The court held that "[s]ince the juror's statements . . . only involved internal deliberations, and alleged no extraneous influence, this claim fails." Id.; see also United States v. Lloyd, 462 F.3d 510, 518 (6th Cir. 2006) (finding that the petitioner's claim that one juror buckled under pressure from other jurors was without merit because there was no credible evidence of extraneous information or influence).

The record doesn't contain evidence supporting Dr. Bek's contention of juror misconduct or coercion. As noted by the cases just discussed, though, even had Dr. Bek presented evidence that two jurors changed their mind and there was coercion in the courtroom, such evidence would be inadmissible under Rule 606

to impeach the verdict. Dr. Bek hasn't alleged extraneous influence on the jury, and as such, he isn't entitled to a hearing on this ground.

*Newly Discovered Evidence*

Dr. Bek's § 2255 petition raises the issue of newly discovered facts, but doesn't specifically indicate what facts were newly discovered. After reviewing Dr. Bek's attachment to the petition (Exhibit A), it appears that he is claiming that paragraphs 1, 13, 19 and 20 present newly discovered facts. Dr. Bek asserts vindictive prosecution in paragraph 1; the court already addressed this claim above and found it without merit. In paragraphs 13, 19 and 20, Dr. Bek asserts the following facts: in a subsequent similar case involving two pain medicine doctors, an expert doctor testified that "[t]here are not clear standards for prosecutors to follow; just like there are not clear guidelines to physicians to follow to easy [sic] pain," and "[t]he solution is better education of prosecutors and physicians" (paragraph 13); that Dr. Bek was unaware of the "Federal policy of working against Afghanistan by little or no use of control drugs to work against economy of Afghanistan including medical control drugs[]" (he learned this while incarcerated) (paragraph 19); and that he was "unaware . . . that abuse of illegal drugs, heroin, and cocaine with ruthless violence against other humane being [sic] was going on in the society, in the state of Florida and some other states[]" (he learned this while incarcerated) (paragraph 20).

Under Federal Rule of Criminal Procedure 33, a district court may grant a new trial on the basis of newly discovered evidence within three years of the verdict or finding of guilt. Here, the three year limit expired several months before Dr. Bek filed his § 2255 petition. Section 2255 cannot be used to circumvent the limitations in Rule 33. See Mankarious v. United States, 282 F.3d 940, 945 (7th Cir. 2002) (citing Guinan v. United States, 6 F.3d 468, 470 (7th Cir.1993), *overruled in part on other grounds by* Massaro v. United States, 538 U.S. 500 (2003)). Even if Dr. Bek could raise a Rule 33 motion though it wouldn't succeed. To succeed on a motion for new trial based upon newly discovered evidence, the petitioner must show, among other things, that the information would probably lead to an acquittal in the event of a new trial. See United States v. Hodges, 315 F.3d 794, 801 (7th Cir. 2003).

Expert testimony that there aren't clear guidelines for physicians to follow to ease pain and the solution is better education (paragraph 13) isn't the type of evidence that would "probably lead to an acquittal." The jury was instructed to consider the evidence to determine whether Dr. Bek was distributing controlled substances other than for a legitimate medical purpose or not within the bounds of professional medical practice and to consider testimony relating to "norms" of professional practice when making this determination. Jury Instruction No. 24. The instructions also provided that a physician cannot be convicted when he dispenses "controlled substances in good faith to patients in the regular course of professional practice" and "may not be convicted if he merely made an honest

effort to treat his patients/customers in compliance with an accepted standard of medical practice." Jury Instruction No. 25. The court presumes that the jury followed these instructions. <u>See</u> <u>United states v. Bek</u>, 493 F.3d at 799. The jury heard testimony from Dr. Bek's expert explaining that Dr. Bek's practices and prescribing methods were appropriate. The expert testified that Dr. Bek's "practice of medicine [was] appropriate for the kind of conditions he was treating and the population he was serving," that he "is a good caring physician, . . . competent and . . . took good care of his patients," and was prescribing within the legitimate practice of medicine. (Tr. VI, pp. 125-26). The jury also heard contradictory testimony from the government's expert witnesses. After weighing the evidence, the jury found Dr. Bek guilty; the court of appeals held that the jury had more than enough evidence to determine that Dr. Bek had a general practice of prescribing controlled substances outside the course of professional conduct. It is for Congress and not the jury to determine whether Dr. Bek's illegitimate prescribing practices should instead be addressed through better education. Dr. Bek hasn't met his burden to show prejudice on this ground.

Similarly, Dr. Bek's ignorance of the government's alleged motivation to work against Afghanistan's economy by controlling the distribution of prescription drugs and that illegal drug abuse and violence was going on in society doesn't effect the jury's conclusion that Dr. Bek prescribed medications outside the bounds of professional medical practice. Even if Dr. Bek wasn't aware of the government's motivation in prosecuting drug crimes or the affect such crimes have

on society, Dr. Bek was aware of the actions he took in prescribing medications and the jury properly found that his actions were outside the bounds of professional practice.

For a claim of newly discovered evidence to be raised here it must meet certain requirement outlined in the opening paragraph of § 2255. See Mankarious v. United States, 282 F.3d at 945. Dr. Bek had to "allege either that the challenged sentence was imposed in violation of the Constitution or laws of the United States, that the court was without jurisdiction to impose the sentence, that the sentence was in excess of the maximum authorized by law, or that the sentence is otherwise subject to collateral attack." Mankarious v. United States, 282 F.3d at 945; see also Ruth v. United States, 266 F.3d 658, 661 (7th Cir. 2001) ("An argument of actual innocence based on newly discovered evidence does not implicate the Constitution, and so a Rule 33 motion that actually argues innocence, rather than offers 'new evidence of a constitutional violation or other ground of collateral attack,' is not a 2255 filing.") (internal citations omitted). Even if the facts asserted in paragraphs 13, 19 and 20 might have been helpful during trial, "a conviction does not violate the Constitution nor become otherwise subject to collateral attack merely because newly discovered evidence may be helpful to a defendant." Mankarious v. United States, 282 F.3d at 945. Dr. Bek's claim of newly discovered evidence, untimely under Rule 33, doesn't meet the requirements of § 2255.

*Ineffective Assistance Counsel*

Dr. Bek may raise an ineffective assistance of trial counsel claim for the first time on post conviction review. See Massaro v. United States, 538 U.S. 500, 504 (2003) (finding that a federal defendant can always wait and raise ineffective assistance claims on collateral attack). Dr. Bek has a heavy burden in proving that his counsel rendered ineffective assistance: he must point to particular instances of action (or inaction) on his attorney's part that allegedly constitutes ineffective assistance. See Jones v. Page, 76 F.3d 831, 840 (7th Cir. 1996); see also Berkey v. United States, 318 F.3d 768, 772 (7th Cir. 2003). Dr. Bek then must show that (1) his counsel's performance in those specified situations was unreasonably deficient; and (2) that the deficient performance prejudiced the defense. See Strickland v. Washington, 466 U.S. 668, 687 (1984). The court must deny an ineffective claim if the petitioner makes an insufficient showing on either prong. Id. at 697.

To establish that an attorney's conduct was unreasonably deficient, the petitioner must establish that the attorney acts or omissions "fell below an objective standard of reasonableness" and "outside the wide range of professionally competent assistance." See Barker v. United States, 7 F.3d 629, 633 (7th Cir. 1993) (citing Strickland v. Washington, 466 U.S. at 690). In making this determination, the court considers "the reasonableness of counsel's conduct in the context of the case as a whole, viewed at the time of the conduct . . ." United States v. Lindsay, 157 F.3d 532, 534-535 (7th Cir. 1998). The court's

scrutiny of counsel's performance is highly deferential, and there is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. See Coleman v. United States, 318 F.3d 754, 758 (7th Cir. 2003), see also Williams v. Washington, 59 F.3d 673, 679 (7th Cir. 1995) (noting that the first prong of Strickland "contemplates deference to strategic decision-making").

To establish prejudice, Dr. Bek must do more than show that "the errors had some conceivable effect on the outcome of the proceeding." Strickland v. Washington, 466 U.S. at 693. He must show that "'there is a reasonable probability that, but for counsel's unprofessional errors, the results of the proceeding would have been different,' meaning 'a probability sufficient to undermine confidence in the outcome.'" Eckstein v. Kingston, 460 F.3d 844, 848 (7th Cir. 2006) (quoting Strickland v. Washington, 466 U.S. at 694). Stated differently, Dr. Bek must establish that "effective assistance would have given him a reasonable shot at acquittal." Gibbs v. VanNatta, 329 F.3d 582, 584 (7th Cir. 2003). Dr. Bek can't simply criticize counsel for failing to take particular steps; he "must also address what action counsel did take, and then evaluate [his] performance as a whole." Eckstein v. Kingston, 460 F.3d at 849 (citing U.S. rel. Hampton v. Leibach, 347 F.3d 219, 248 n. 14 (7th Cir. 2003)); see also Andrashko v. Borgen, 88 Fed.Appx. 925, 929 (7th Cir. 2004) (unpublished) (citing Berkey v. United States, 318 F.3d 768, 773 (7th Cir. 2003)) (petitioner must specifically explain how the outcome at trial would have been different absent counsel's

ineffective assistance). "In weighing the effect of counsel's errors, the court must consider the totality of the evidence . . . . [A] verdict or conclusion that is overwhelmingly supported by the record is less likely to have been affected by errors than one that is only weakly supported by the record." Eckstein v. Kingston, 460 F.3d at 848 (quoting Hough v. Anderson, 272 F.3d 878, 891 (7th Cir. 2001)).

Dr. Bek asserts in the pre-printed form portion of his petition that the basis of his § 2255 petition is "Denial of effective assistance of counsel," and also states at the top of the attached Exhibit A - "Ineffective representation; Following issues were not clearly explained to the Jury members." Other than stating that the issues weren't clearly explained to the jury, Dr. Bek doesn't explain or elaborate specifically how his counsel's performance was deficient. Dr. Bek can't succeed in obtaining an evidentiary hearing on his claim of ineffective assistance by making bare allegations with no supporting evidence. See Galbraith v. United States, 313 F.3d 1001, 1009 (7th Cir. 2002) (finding that where petitioner didn't present an affidavit supporting his version of counsel's conduct, nor any other available, probative evidence that would effectively support his claim, no evidentiary hearing was required and petitioner's claim was denied). "'[I]t is the rule of this court that in order for a hearing to be granted, the petition must be accompanied by a detailed and specific affidavit which shows that the petitioner had actual proof of the allegations going beyond mere unsupported assertions." Galbraith v. United States, 313 F.3d at 1009 (quoting Prewitt v. United States, 83 F.3d 812, 816 (7th

Cir. 1996)). Similarly, the petitioner needs more than mere conclusory allegations to satisfy <u>Strickland's</u> prejudice component. <u>United States v. Asubonteng</u>, 895 F.2d 424, 429 (7th Cir. 1990). There is a lack of evidence in the record supporting Dr. Bek's bare assertions; Dr. Bek hasn't met his burden to demonstrate that his counsel's performance rose to the level of constitutionally ineffective assistance or that but for such alleged ineffectiveness, there is a reasonable probability that the result of the proceeding would have been different.[14]

Even if there was evidence in the record to support his allegations though, the allegations are insufficient to establish ineffective assistance of counsel. As already explained, Dr. Bek's claims of vindictive/selective prosecution, forfeiture as a violation of the Eighth Amendment and juror misconduct/coercion are without merit. Even if Dr. Bek's counsel was unreasonably deficient in addressing these issues, Dr. Bek suffered no prejudice by such alleged deficient conduct. Similarly, to the extent Dr. Bek claims ineffective assistance of counsel as to certain facts he discovered after trial (paragraphs 13, 19 and 20), for the reasons already outlined, Dr. Bek cannot establish that these facts, if presented to the jury, would have given him a reasonable shot at acquittal. Dr. Bek's remaining claims (paragraphs 2, 5, 6, 7, 8, 9, 10, 11, 12, 14, 26, 27, 28, 29) consist of facts which Dr. Bek contends weren't sufficiently explained to the jury.

---

[14] It should be noted that the trial judge stated in a June 20, 2005 order denying Dr. Bek's motion for acquittal and for new trial that Dr. Bek's counsel was "well prepared and entirely competent," and that the "standards under <u>Strickland v. Washington</u>, 466 U.S. 668 (1984) were met." Judge Sharp's opinion in this respect is relevant because having observed the trial, he had "an advantageous perspective for determining the effectiveness of counsel's conduct and whether any deficiencies were prejudicial." <u>Massaro v. United States</u>, 538 U.S. at 506.

Whether to call a witness is a lawyer's strategic decision that generally isn't subject to review. United States v. Williams, 106 F.3d 1362, 1367 (7th Cir. 1997). "[T]rial counsel [need not] track down every lead or . . . personally investigate every evidentiary possibility before choosing a defense and developing it." United States v. Balzano, 916 F.2d 1273, 1294 (7th Cir.1990) (quoting Sullivan v. Fairman, 819 F.2d 1382, 1392 (7th Cir. 1987)). Counsel needn't "present each and every witness that is suggested to him[;] . . . such tactics would be considered dilatory unless the attorney and the court believe the witness will add competent, admissible, and non-cumulative testimony to the trial record." United States v. Balzano, 916 F.2d at 1294. "When counsel focuses on some issues to the exclusion of others, there is a strong presumption that he did so for tactical reasons rather than through sheer neglect." Yarborough v. Gentry, 540 U.S. 1, 5 (2003). Attorneys may have a "tactical reason not to make weak arguments . . . [which] may distract the court from the strong arguments and as a result make it less likely to rule in the defendant's favor." See United States v. Rezin, 322 F.3d 443, 446 (7th Cir. 2003).

Dr. Bek claims that his trial counsel should have explained to the jury that he referred chronic pain patients who were pregnant to bigger management centers or to OB/GYN doctors for pain treatment (paragraph 2) and that patients who had signs of addiction were referred to bigger pain management centers (paragraph 27). Dr. Bek doesn't state that he ever discussed these facts with his counsel. Even if he had, though, the decision to emphasize these facts during trial is the type of strategic decision generally left to counsel's discretion. See United

States v. Pergler, 233 F.3d 1005, 1009 (7th Cir. 2000) ("[W]e presume that the attorneys made reasonable judgments and decline to second guess strategic choices."). Further, Dr. Bek hasn't explained how the trial's outcome would have differed had this information been presented to the jury. The jury heard testimony from a female patient that Dr. Bek prescribed her drugs while she was visibly pregnant without warning her about the effects the drugs might have on her pregnancy. Another patient testified that even though he had visible signs of scars from heroin injections, Dr. Bek never asked about them or required any type of drug testing. Dr. Bek hasn't raised a reasonable probability that the outcome would have been different if his counsel had presented evidence that Dr. Bek always referred pregnant patients or those patients who had signs of addiction to other physicians, especially when there was evidence that directly contradicted such claims.

Similarly, Dr. Bek wanted the jury to hear evidence that most of his patients had no signs of addiction or unusual behaviors (paragraph 26). The jury heard evidence that Dr. Bek didn't properly examine his patients or look into their medical histories. The fact asserted in paragraph 26 may have reinforced the government's claim that Dr. Bek didn't properly examine his patients and as a result, didn't notice signs of addiction or unusual behavior. It was within trial counsel's discretion not to emphasize facts that could lead to such an inference.

Dr. Bek also wanted the jury to hear evidence that a large number of patients that had unusual behavior had been terminated from his patient list

(paragraph 27). The jury heard evidence that several patients with unusual behavior hadn't been terminated from Dr. Bek's practice; Dr. Bek now asserts that many patients with unusual behavior - not all - had been terminated. Based on the evidence presented at trial, Dr. Bek hasn't made a showing that he was prejudiced by his counsel's decision not to present this evidence.

Dr. Bek also claims that when he received a letter from Dennis[15] Trawbridge's health insurance company stating that Ms. Trawbridge was getting medications from different doctors, he confronted the patient and after reviewing her chart, determined that she was going to other doctors only while Dr. Bek's office was closed when he was away for CME training or on vacation (paragraph 7). Again, Dr. Bek doesn't say whether he ever discussed this fact with his counsel or how his counsel's performance was deficient. Even if his counsel was deficient, Dr. Bek doesn't establish prejudice. The jury heard testimony that Dr. Bek had received a letter from an insurance company notifying him that there was a potential for over-utilization of controlled substances. The letter made Dr. Bek aware that the health care benefits programs was ultimately paying some (or all) of the costs of those drugs, which the jury determined were medically unnecessary. That Ms. Trawbridge was going to other doctors only when Dr. Bek's office was closed doesn't challenge the finding that Dr. Bek was aware that insurance was being used to pay for unnecessary medications, and thus is insufficient to establish the prejudice prong of Strickland.

---

[15] It appears from the record that Dr. Bek meant "Denise".

Dr. Bek also asserts that it should have been clearly explained to the jury that he didn't know that his assistant was coaching patients on what to say (paragraph 8). Dr. Bek's trial counsel defended against the allegations of conspiracy during trial and even filed a motion for acquittal and new trial arguing that the prosecution had failed to bring forth sufficient evidence to establish the essential elements of a conspiracy. As the trial court found (and the court of appeals affirmed), the government presented sufficient evidence of a conspiracy between Dr. Bek and Mr. Faloona. Dr. Bek's trial counsel's arguments in this regard were neither deficient nor prejudicial to Dr. Bek.

Dr. Bek next asserts that when more than one patient was in his examination room, they were family members or boyfriend and girlfriend (paragraph 8), and so not unrelated individuals. Although Dr. Bek testified at trial as to his examinations, he doesn't explain why he didn't testify to these facts. Additionally, the record doesn't contain anything to establish that Dr. Bek was prejudiced by his counsel's alleged error to bring forth these facts. There was testimony that sometimes the patients knew each other or had a familial relationship, but there was also testimony that strangers were asked to enter Dr. Bek's examination room. Based on the evidence presented to the jury, the factual contention asserted in paragraph 8 wouldn't affect the jury's finding that Dr. Bek prescribed drugs to patients for no medical purpose.

Dr. Bek also wanted the jury to hear evidence that most of his patients had physically demanding jobs and Dr. Bek prescribed pain medication to them so

they could return to work and make a living (paragraphs 10 and 11). Evidence was presented that Dr. Bek saw construction workers, tree trimmers, waitresses and others with very physical jobs. Even if Dr. Bek doesn't believe this issue was sufficiently addressed during trial, this is the type of weak argument that an attorney may decide not to emphasize because it can distract the jury from stronger arguments. See United States v. Rezin, 322 F.3d at 446. As such, Dr. Bek cannot establish prejudice as to this fact.

Similarly, Dr. Bek asserts that he was a member of American Society of Pain Management and American Society of Bariatrics and regularly had CME training on pain medicine and bariatrics during the relevant period (paragraphs 12 and 14). The jury heard that Dr. Bek had training and had attended the American Academy of Pain Management to deal with chronic pain patients. Dr. Bek doesn't explain how additional information on his training would have affected the outcome of trial.

Dr. Bek also contends that "he feels he got False testimony" from several witnesses because they lied to Dr. Bek and there is "no guarantee that they were not lying in the court" (paragraph 29). Although Dr. Bek doesn't provide names of the witnesses he believes probably lied, there was evidence presented to the jury that several of Dr. Bek's patients, who were witnesses during trial, had lied to Dr. Bek to obtain drugs. Dr. Bek doesn't explain how his counsel was deficient in this regard. See Coleman v. United States, 318 F.3d at 758 (stating that to overcome the presumption that an attorney's performance is effective, the plaintiff must

establish specific acts or omissions of his counsel which constitute ineffective assistance). Nor has Dr. Bek asserted how he was prejudiced from his counsel's alleged deficiency. Dr. Bek's ineffective assistance of counsel claim on this ground cannot succeed.

Finally, Dr. Bek contends that the assistant prosecutor lied during trial when she stated that he "was making $900,000.00 per year every year, drug money", and the tax returns he gave to Judge Sharp establish otherwise (paragraph 5). First, Dr. Bek hasn't suggested that his counsel was deficient in providing evidence to the jury of Dr. Bek's profits from his clinic. Second, it may have been a strategic decision by Dr. Bek's counsel not to bring attention to Dr. Bek's tax returns lest he face prosecution for tax evasion. Third, Dr. Bek hasn't made any allegations of prejudice arising from his counsel's performance with respect to the tax returns and there is no suggestion that such evidence would have a reasonable probability of changing the outcome of the trial. The charges against Dr. Bek didn't include a specified amount of drugs and the jury wasn't required to decide that a certain amount of drugs were dispensed. Dr. Bek's claim on this ground is unpersuasive.[16]

Dr. Bek's unsupported allegations and conclusory statements are insufficient to support a finding of ineffective assistance of counsel, and as such,

---

[16] Dr. Bek has also raised issues related to the state court proceeding in paragraphs 9, 15 and 31. Dr. Bek doesn't explain why these issues are relevant to the federal prosecution or how they would relate to his claim of ineffective assistance of counsel. As such, the court declines to consider these facts.

no evidentiary hearing is required. See Aleman v. United States, 878 F.2d 1009, 1012 (7th Cir. 1989).

CONCLUSION

For the reasons stated above, the court DENIES Dr. Bek's § 2255 petition [Doc. No. 518].

SO ORDERED.

ENTERED:  __November 24, 2008__

                                                    ___/s/ Robert L. Miller, Jr._____
                                                    Robert L. Miller, Jr., Chief Judge
                                                    United States District Court